UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PRAKASH KC,

                        Petitioner,

        v.

TODD BLANCHE, *et al*.,

                        Respondents.

Case No. C26-1524-SKV

ORDER GRANTING IN PART
PETITION FOR WRIT OF
HABEAS CORPUS

Petitioner Prakash KC is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking release from custody.  Dkt. 1.  Petitioner, who is proceeding through counsel, asserts that he is entitled to release from custody because removal to his former country of residence is not reasonably foreseeable and his continued detention is therefore in violation of *Zadvydas v. Davis*, 533 U.S. 678 (2001).  *See id*. at 3, 21-23.  Petitioner asserts additional claims related to third country removal.  *See id*. at 22-25.  Respondents have filed a return to the petition (Dkt. 9), together with the declarations of ICE Deportation Officer ("DO") Joseph Carnevale (Dkt. 10), and Respondents' counsel Jennifer Wong (Dkt. 11).  Petitioner has filed a reply to the return.

ORDER GRANTING IN PART PETITION
FOR WRIT OF HABEAS CORPUS - 1

(Dkt. 12.)  This matter is now ripe for review.

The Court, having considered the parties' submissions and the governing law, GRANTS in part Petitioner's petition for writ of habeas corpus (Dkt. 1), as set forth below.

## I.      BACKGROUND

Petitioner is a native and citizen of Nepal.  Dkt. 1 at 6; Dkt. 10, ¶ 3.  He entered the United States from Mexico on or about May 12, 2025, and was placed in expedited removal proceedings.  Dkt 1 at 6; Dkt. 10, ¶ 4; Dkt. 11, Ex. 1 at 3, Ex. 2.  Following entry, Petitioner made a credible fear claim and, on May 26, 2025, United States Citizenship and Immigration Services ("USCIS") conducted a credible fear interview after which the asylum officer found Petitioner had no credible fear of returning to Nepal.  *See* Dkt. 1 at 6; Dkt. 10, ¶ 7; Dkt. 11, Ex. 1 at 1, 3.  On the same date, Petitioner was served with a Notice and Order of Expedited Removal charging him with being inadmissible under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I).  Dkt. 10, ¶ 6; Dkt. 11, Ex. 2.

Petitioner was detained in Texas for two months before being transferred to NWIPC on July 12, 2025.  Dkt. 1 at 6.  In October 2025, Petitioner was offered another credible fear interview and the asylum officer again found no credible fear.  *Id.*  On October 22, 2025, apparently at Petitioner's request, the asylum officer referred Petitioner to an immigration judge ("IJ") for review of his credible fear claim.  *See* Dkt. 10, ¶¶ 7, 8.  On October 24, 2025, Petitioner appeared before an IJ, the negative fear determination of USCIS was affirmed, and Petitioner's Order of Expedited Removal became final.  *See* Dkt. 1 at 6; Dkt. 10, ¶ 9; Dkt. 11, Ex. 3.

On February 24, 2026, Petitioner completed an application for his Nepalese passport.  Dkt. 10, ¶ 11.  Thereafter, on March 2, 2026, and again on March 10, 2026, ICE Enforcement

ORDER GRANTING IN PART PETITION
FOR WRIT OF HABEAS CORPUS - 2

and Removal Operations ("ERO") spoke with Petitioner about getting some form of identification from Nepal, such as a Nepalese identification number, to assist in getting him a passport. *Id.*, ¶ 12. On April 22, 2026, Petitioner received his Nepalese identification number and provided it to ERO. *Id.*, ¶ 13. ERO is purportedly in the process of preparing a travel document request for Petitioner. *Id.*

Petitioner initiated the instant action on May 5, 2026. Petitioner asserts in his federal habeas petition that: (1) his continued detention violates the Due Process Clause of the Fifth Amendment because there is no significant likelihood that he will be removed in the reasonably foreseeable future; (2) any attempt to carry out his removal to a third country requires notice and a meaningful opportunity to be heard in reopened removal proceedings, as mandated by statute and the Constitution; and (3) Respondents' third-country removal program is punitive and is therefore unconstitutional under the Fifth and Eighth Amendments. *See* Dkt. 1 at 21-25. Petitioner seeks immediate release from custody and injunctive relief relating to future re-detention and third-country removal. *Id*. at 25-26.

Respondents, in their return, argue that: (1) Petitioner's continued detention is lawful and is not indefinite; (2) Petitioner lacks standing to pursue claims based on speculative removal to a third country; and (3) Petitioner's requests for injunctive relief relating to future re-detention exceed the narrow scope of habeas review. *See* Dkt. 9 at 4-9.

## II.    LEGAL STANDARDS

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or

ORDER GRANTING IN PART PETITION
FOR WRIT OF HABEAS CORPUS - 3

treaties of the United States[.]" *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

### III.    DISCUSSION

#### A.    Indefinite Detention

Title 8 U.S.C. § 1231 governs the detention and release of noncitizens such as Petitioner who have been ordered removed.  Under § 1231(a), the Department of Homeland Security ("DHS") is required to detain a noncitizen during the 90-day "removal period."  8 U.S.C. §§ 1231(a)(1)(A), (a)(2).  After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens or to release them on supervision.  8 U.S.C. § 1231(a)(6).  Although § 1231(a)(6) authorizes ICE to detain noncitizens beyond the initial 90-day window, it cannot do so indefinitely.  *See Zadvydas*, 533 U.S. at 682.

In *Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States.  533 U.S. at 701.  The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States.  *Id*.  "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id*.  If the government is unable to meet its burden, then the noncitizen must be released from detention.  *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

The six-month presumption is not a strict deadline; a noncitizen may be detained beyond six months if removal remains likely.  *Zadvydas*, 533 U.S. at 701.  Nevertheless, "for detention

to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

There is no dispute that Petitioner's Order of Expedited Removal became final on October 24, 2025. *See* Dkt. 1 at 8; Dkt. 9 at 4. It is therefore clear that Petitioner's detention has exceeded the six-month period *Zadvydas* identifies as "presumptively reasonable." 533 U.S. at 701. Petitioner asserts that in the months since his removal order became final, there has been little or no progress towards ICE obtaining travel documents for him, and he argues there is good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. *See* Dkt. 1 at 8, 22. Petitioner cites to political instability in Nepal due to a recent coup, and to a "wave of ministerial resignations and recall of Ambassadors from several countries," which he claims has "hampered administrative functions and stalled governance." *Id.* at 22. Petitioner maintains that this political situation has caused many Nepali detainees to remain in ICE detention for months because ICE has been unable to secure travel documents from Nepal, and he claims that similarly situated Nepali detainees have been granted relief in this district. *Id.* at 7-8 (citing *Sharad K.C. v. Bondi*, 2025 WL 3713844, at *5 (W.D. Wash. Dec. 23, 2025); *Bhandari v. Bondi*, 2026 WL 369403, at *4 (W.D. Wash. Feb. 10, 2026)). Finally, Petitioner represents to the Court that he and other Nepali detainees have been asked by ICE to opt to be removed to third countries causing him to believe ICE "may be having issues deporting to Nepal." Dkt. 1 at 22.

Respondents assert that Petitioner has not met his initial burden under *Zadvydas*, arguing that Petitioner cannot rely on cases brought by other Nepalese detainees for whom travel documents could not be obtained, and who were therefore released from custody, to replace the facts of this case. Dkt. 9 at 5-6. Respondents maintain that not only are the facts of the prior

ORDER GRANTING IN PART PETITION
FOR WRIT OF HABEAS CORPUS - 5

cases distinguishable, both cases were filed several months before this case and, thus, are not necessarily reflective of ERO's current ability to obtain travel documents to Nepal. *Id.* Respondents also dispute Petitioner's assertions regarding a lack of progress toward obtaining a travel document since early 2026 when Petitioner's picture was taken and he was asked to sign paperwork for preparation of a travel document. *Id.* at 6. Respondents note that there were additional developments in March and April 2026, when ERO spoke with Petitioner about obtaining some form of identification from Nepal that would assist him in getting a passport, after which Petitioner obtained a Nepalese identification number and provided it to ERO. *See id.*

While it is true that the facts alleged in this case do not mirror those alleged in the cases cited by Petitioner involving other Nepalese detainees, the prior cases are generally reflective of the difficulties ICE has encountered in removing detainees to Nepal in the midst of political instability that was present at the time those cases were decided and appears to continue today. Petitioner has cited materials which demonstrate that as of April 2026, political and diplomatic instability remain in Nepal. *See* Dkt. 1 at 7 (citing Gopal Sharma, *Second Nepali Minister Leaves Month-Old Government*, Reuters (Apr. 28, 2026), https://www.reuters.com/world/asia-pacific/second-nepali minister-leaves-month-old-government-2026-04-22; *Govt Recalls Six Envoys, 17 Missions Left Without Ambassadors*, The Kathmandu Post (Apr. 28, 2026), https://kathmandupost.com/national/2026/04/07/govt-recalls-six-envoys-17-missions left-without-ambassadors). Respondents make no effort to counter Petitioner's suggestion that this instability presents an impediment to his removal, relying instead on a generalized representation by DO Carnevale that ERO believes it will be able to obtain a travel document for Petitioner in the reasonably foreseeable future. *See* Dkt. 10, ¶ 10

ORDER GRANTING IN PART PETITION
FOR WRIT OF HABEAS CORPUS - 6

However, Petitioner also raises significant questions about the ability of ERO to obtain a travel document in a timely fashion, if at all. While DO Carnevale avers in his declaration that ERO has taken steps to effectuate Petitioner's removal in the over seven months since his removal order became final on October 24, 2025, the first concrete step noted by DO Carnevale did not occur until four months later, on February 24, 2026, when Petitioner completed an application for a Nepalese passport. Dkt. 10, ¶¶ 10, 11. Since then ERO has requested that Petitioner obtain a Nepalese identification number to assist in obtaining a passport and Petitioner has done so (*see id.*, ¶¶ 12, 13), but there is still no indication that a travel document request has been completed nor any explanation as to why the process of simply requesting a travel document has taken so long to complete. Given the political instability in Nepal, and what appears to be extensive delay in obtaining a travel document, this Court concludes that Petitioner has shown "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

As Petitioner has met his initial burden, the burden now shifts to Respondents to rebut Petitioner's showing with evidence. While the record shows that Respondents have taken steps to obtain from Petitioner information necessary to prepare a travel document request, they have not put forth evidence showing when the travel document request is likely to be submitted, when a travel document is likely to issue following submission of the request, or what the timeline for effectuating Petitioner's removal is likely to be once a travel document is obtained. As noted above, Respondents' representations regarding the likelihood of Petitioner's removal appear to rely solely on ERO's belief that it will be able to obtain a travel document in the reasonably foreseeable future, though they provide no details that might allow the Court to reasonably draw this conclusion. Respondents' general optimism that a travel document might be acquired for

ORDER GRANTING IN PART PETITION
FOR WRIT OF HABEAS CORPUS - 7

Petitioner at some unspecified point in the future is insufficient to show that Petitioner's removal is likely in the reasonably foreseeable future. *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) ("Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur.").

Based on the foregoing, the Court finds that Respondents have failed to rebut Petitioner's showing and that Petitioner is therefore entitled to habeas relief with respect to his indefinite detention claim.

### B.      Requests for Injunctive Relief

In addition to his request for release, Petitioner also seeks prospective relief related to any future re-detention. (Dkt. 1 at 26.)  Petitioner asks the Court to prohibit Respondents from re-detaining him without first holding a hearing before a neutral decisionmaker at which the Government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence. (*Id.*)  In addition, Petitioner seeks a related order prohibiting the government from re-detaining him unless it first obtains a travel document to Nepal, provides that travel document to both him and his lawyer, provides him an opportunity to leave on his own, and he does not leave. (*Id.*)

Finally, Petitioner seeks injunctive relief related to his possible removal to a third country. (Dkt. 1 at 26.)  Specifically, Petitioner requests an order prohibiting Respondents from removing, or seeking to remove, him to a third country without first providing notice and a meaningful opportunity to respond in reopened removal proceedings. (*Id.*)  He also seeks an order prohibiting his removal to any third country on the grounds that Respondents' third country removal program seeks to impose unconstitutional punishment on its subjects. (*Id.*)

ORDER GRANTING IN PART PETITION
FOR WRIT OF HABEAS CORPUS - 8

A party "seeking a permanent injunction must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2008).  A permanent injunction requires a "cognizable danger of recurrent violation," not just a past violation.  *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003).

While Petitioner seeks to prohibit his future re-detention absent specific conditions having been met, he acknowledges that his current detention was not the result of an alleged illegal re-detention (Dkt. 1 at 9), and the factual record does not establish a specific, real, and immediate threat that he will be re-detained without process after his release here.  Accordingly, his request for a permanent injunction related to future re-detention is denied without prejudice.

With respect to Petitioner's concern about third-country removal, while Petitioner challenges DHS's third-country removal practices generally, he does not demonstrate there is any real and immediate threat that he will be removed to a third country.  While Petitioner indicates in his petition that he has been asked by ICE to opt to be removed to a third country (Dkt. 1 at 22), DO Carnevale avers that ERO does not intend to remove him to a third county, it solely intends to remove him to Nepal (Dkt. 10, ¶ 14).  Absent evidence of a realistic threat of third-country removal, which Petitioner has not presented, the Court denies Petitioner's request for an injunction limiting third-country removal.  Nothing in this Order prevents Petitioner from seeking such relief in the future if necessary.

## IV.   CONCLUSION

Based on the foregoing, this Court ORDERS as follows:

ORDER GRANTING IN PART PETITION
FOR WRIT OF HABEAS CORPUS - 9

(1)     Petitioner's petition for writ of habeas corpus (Dkt. 1) is GRANTED in part.

(2)     Respondents SHALL release Petitioner from immigration detention within **twenty-four (24) hours** on reasonable conditions of supervision and SHALL file a certification within **two (2) business days** confirming that Petitioner has been released.

(3)     Petitioner's requests for permanent injunctive relief are DENIED without prejudice.

DATED this 9th day of June, 2026.

_S. Kate Vaughan_
S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING IN PART PETITION
FOR WRIT OF HABEAS CORPUS - 10